SHADBURN BANKING COMPANY *et al. v.* STREETMAN, administrator; *et vice versa.*

Nos. 10640, 10666. MARCH 16, 1935.

*A. G. Liles, S. M. Ledford,* and *Wheeler & Kenyon,* for plaintiff in error in main bill of exceptions.

*Howell Brooke, John I. Kelley,* and *G. Fred Kelley,* contra.

GILBERT, Justice. G. W. Streetman and his wife, being aged, infirm, and unable to care for themselves, during the last years of their lives made their home near Mrs. W. O. Davis, who was a half-sister of G. W. Streetman. Mrs. Streetman died on February 1, 1930, and G. W. Streetman then moved to the home of Mrs. Davis, where he died one month later. At the time of his death he had $1200 on deposit with Shadburn Banking Company. W. O. Davis applied for letters of administration on Streetman's estate. An intervention was filed by Mrs. W. O. Davis, in which she alleged that Streetman had made a contract with her under which she agreed to wait on him and his wife and care for them during the remainder of their lives, and for this service Mrs. Davis was to have "what little estate he had left after paying any debts he might owe and funeral expenses." She alleged her relationship and faithful compliance with her part of the contract, and detailed the services rendered, the helplessness of the man and his wife and the mental feebleness of the latter. She averred that the value of the services rendered was many times the value of the estate, that none of decedent's other relatives helped him, and that it would be unjust and inequitable for them to try to control the administration of the estate when they had no interest in it and she, Mrs. Davis, was entitled to all of it. She prayed that she might be appointed administratrix. It appears that J. S. Streetman filed a caveat to the proceeding, and on the hearing, which occurred in April, 1930, the ordinary appointed Mrs. W. O. Davis administratrix. She qualified and gave bond, the sureties being W. O. Davis, Tapp, Pugh, and Bradberry. In April, 1930, the $1200 deposit in bank was transferred out of the account of G. W. Streetman at the bank and into Mrs. W. O. Davis's name as administratrix. In January, 1931, Mrs. Davis drew a check against this account; other checks were afterwards drawn; and about March 9, 1932, she drew out the last of the $1200 and the interest which had accumulated on it. On the trial she testified that she had in court the $1200 in cash, in her satchel, at the time she was testifying. J. S. Streetman, who had filed the caveat to the original application for the appointment of the administrator, entered an appeal from the order

of April, 1930, appointing Mrs. Davis, and on the trial of this appeal in the superior court the jury rendered the following verdict: "We, the jury, find in favor of J. S. Streetman, caveator, and find that he be appointed administrator as prayed." On this a decree was entered by the court in which it was adjudged that J. S. Streetman "be and hereby is appointed administrator of the estate of G. W. Streetman, deceased, and the ordinary of Gwinnett County is hereby directed to issue letters of administration in accordance with this judgment, upon his qualifying as provided by law." This decree is dated March 9, 1932.

In May, 1932, the present case was instituted. J. S. Streetman filed suit in the superior court against the Shadburn Banking Company, alleging that he was the duly qualified administrator of G. W. Streetman, that the bank was indebted to him $1200 and interest, and refused to pay it. He prayed for judgment. To this petition the bank answered that the money had previously been drawn out by Mrs. W. O. Davis as administratrix. It prayed that Mrs. Davis be made a party to the case, and, if it should be shown that plaintiff was entitled to the fund, that Mrs. Davis be required to pay it over. In an amended answer the bank prayed that the sureties on Mrs. Davis's administrator's bond also be made parties. The court ordered that Mrs. Davis, individually, and as administratrix be made a party. J. S. Streetman had filed objections to the proposal to make Mrs. Davis a party, and these were overruled. He also demurred to the answer of the bank. This also was overruled. Exceptions pendente lite were entered. Mrs. Davis filed an answer and cross-action, in which she set up her contract with G. W. Streetman, deceased, but stated it in terms different from those used in the intervention she had filed in the ordinary's court. The allegation in the latter paper was that G. W. Streetman agreed that she was to have "what little estate he had left after paying any debts he might owe and funeral expenses." The averment in the answer is that "she was to have as her own all the property owned by him of whatsoever nature, subject to his needs and whatever amount thereof in connection with the services rendered by her for the support and maintenance of the said Streetman and his wife during the remainder of their lives." In this answer and cross-action the further allegation appeared that upon deposit of the money by G. W. Streetman in the bank the latter became a volunteer trustee

of the fund for the benefit of Mrs. Davis, and on Streetman's death was bound to deliver it to her. The specific prayers were for a declaration of trust to that effect, for a decree of specific performance of the contract, and that it be adjudged that the delivery of the money by the bank to her had been an execution of the trust and an acquittance from liability on the part of the bank.

After Mrs. Davis's answer and cross-action were filed, J. S. Streetman amended his original petition, alleging that the amount originally sued for constituted all the estate except $77 in the hands of Mrs. Davis, and that the funeral expenses and doctor's bill had not been paid. He had also previously filed a plea to the jurisdiction as to Mrs. Davis's cross-action, alleging that he was a resident of Forsyth County. He demurred to the answer and cross-action of Mrs. Davis. This demurrer was overruled, and he excepted. The case came on to be tried, and after the introduction of evidence the court, on motion of the plaintiff, directed a verdict for $1200 and interest in favor of the plaintiff against all the defendants, that is to say, the bank, Mrs. Davis, and the four sureties on her administrator's bond. A decree was entered accordingly. A motion for new trial was filed by Mrs. Davis, and the bank; this was overruled, and they excepted. In his direction of the verdict the court said: "The way I see the evidence, there is no question but that Mrs. Davis is entitled to a considerable sum for her labor in waiting on and her care and attention of these old people; but I don't think the evidence in this case, taking it all together, authorizes a verdict in favor of her for the whole amount, but it would be rather for whatever her services were really worth, taking all the evidence together. . . The court will direct that one of you gentlemen sign a verdict in favor of the administrator against the bank for $1200 and against the codefendant, Mrs. Davis, and that she be allowed to set up her rights as a debt against the estate for all services that the estate may owe her." In the main bill of exceptions complaint is made of the overruling of the motion for new trial. In the cross-bill J. S. Streetman complains of the alleged errors embraced within his exceptions pendente lite. We do not find in the record any order making the four sureties parties to the cause, nor have we seen any answer filed by them. Although the verdict was "against all the defendants," and in the final decree judgment was specifically rendered against all six of the persons

504

indicated, the bank, Mrs. Davis, Tapp, Pugh, Bradberry, and W. O. Davis, only the bank and Mrs. Davis moved for a new trial. In the main bill of exceptions the six are named as plaintiffs in error. In the cross-bill the six are named as defendants in error.

■ The court erred in directing the verdict against the bank, and in entering the decree against it for the $1200. The uncontradicted evidence showed that it had paid this money to Mrs. Davis as administratrix. The court evidently thought this payment did not absolve it from liability to J. S. Streetman, the second administrator. We think otherwise. Mrs. Davis was appointed administratrix in April, 1930, presumably on April 7. She gave bond and received her letters. The appeal was entered from this judgment on April 10, but it is not shown that the bank ever had actual notice of this appeal. Moreover, the cashier testified, "I paid out the money to Mrs. Davis while she was administratrix of Mr. Streetman's estate, on April 8, 1930." This was before the appeal was entered. The ledger sheet was introduced; and while it does not show the exact date when the account was transferred, it does not contradict this positive statement of the cashier. Mrs. Davis drew her first check against the account in January, 1931; but, while the appeal was then pending, nothing is shown to bring actual notice of it home to the bank. The cashier stated in effect he knew litigation had arisen over the representation of the estate, but his evidence does not contain an admission that he knew Mrs. Davis's letters had been suspended by an appeal at the time her checks were cashed. With reference to the last check, $751, charged against the account on the day the case was tried and the jury found that J. S. Streetman should be appointed administrator, the cashier testified, "I knew the litigation was on then. I knew it was pending in court, and that litigation involved the proper administration to handle these funds in the bank." This date was March 9, 1932. Mrs. Davis testified that she did not draw this check for the balance in the bank on the day the judgment was rendered, and said, "If the bank has it marked drawn out on March 9, they must have it marked up after it was drawn out."

It is true that an appeal from an ordinary's order appointing an administrator suspends the judgment (Code of 1933, § 110-303; and see *Reagan* v. *Powell,* 125 *Ga.* 89, 53 S. E. 580), but it does not vacate it. *Watkins* v. *Angier,* 99 *Ga.* 519 (27 S. E. 718). And

it is well settled that when an administrator is appointed by a court of ordinary which has proper jurisdiction, all his acts done in due course and all persons who have dealt with him in good faith will be protected, even though his letters are subsequently revoked. 23 C. J. 1085, 1086 and cit.; 23 C. J. 1109; 24 C. J. 693. Before the appeal was entered the account had already been transferred into the name of Mrs. Davis as administratrix. Thereafter, in the absence of actual notice that her letters had been suspended by the appeal, the bank had the right to honor her checks. Counsel for J. S. Streetman insist on notice by lis pendens (Code of 1933, § 37-117) ; but lis pendens does not apply to choses in action. *Carmichael Tile Co.* v. *Yaraab Temple Co.*, 177 *Ga.* 328 (170 S. E. 294).

We have not found any decision which squarely covers the point here presented, but we think the principle stated in *Burch* v. *Americus Grocery Co.*, 125 *Ga.* 153 (53 S. E. 1008), is analogous. In that case it was ruled that until notice of revocation has been brought home to those who have been dealing with a general agent, the acts of the agent within the apparent scope of his authority will be binding on the principal, even though the agent may assume to act in his representative capacity after his authority has been revoked. And it will be observed that the appeal in the administration proceedings involved in the present case did not revoke the letters of Mrs. Davis, but at most suspended them. See 2 C. J. 539, 540; Union Bank & Trust Co. *v.* Long Pole Lumber Co., 70 W. Va. 558 (74 S. E. 674, 41 L. R. A. (N. S.) 663, and cit. From the text on page 664: "It is settled that the acts of an agent after his authority has been revoked bind the principal as against third persons who, in the absence of notice of the revocation of the agent's authority, rely on its continued existence. The cases are practically unanimous on this general rule, and most of them summarily state it as if it were an axiom.") When Mrs. Davis, who had been legally appointed the administratrix, had the bank account transferred to her as such before the entry of the appeal, the bank was not thereafter, each time she presented a check, obligated to inquire of the ordinary's court whether her authority continued or had been suspended; and we do not think that knowledge by the cashier that litigation was pending in court, "invoking the proper administration to handle these funds," put him on inquiry before he cashed her checks to ascertain whether there had been a

suspension or revocation of her authority. Knowledge of "pending" litigation was not sufficient notice of such a change in the legal status of Mrs. Davis's letters as required the bank to refuse further to recognize her right to deal with the money which was then on deposit in her name as administratrix. The transfer of the $1200 fund into the name of Mrs. Davis as administratrix while she was the lawful administratrix and before the entry of the appeal, and her checking it out later, in the absence of actual notice that the appeal had been entered or her letters revoked or even suspended, absolved the bank from further liability.

It should be added that J. S. Streetman, being a caveator in the proceedings in the ordinary's court for the appointment of an administrator, was there advised by Mrs. Davis's intervention that G. W. Streetman had had $1200 and that Mrs. Davis was claiming the right to all or nearly all of it. Furthermore, J. S. Streetman testified at the trial that G. W. had told him "about having $1200 in the bank." Yet, although the proceedings in the ordinary's court resulted in the appointment of Mrs. Davis as administratrix, and J. S. Streetman accordingly knew that her letters would give her prima facie authority to take charge of the assets of the estate, he served no notice on the bank that he was contesting her right to the office, that he was filing an appeal from the judgment, and that if the bank thereafter recognized her letters it would do so at its own risk. Considering that he did not do so, along with the other elements of the situation, he is not now in position to insist that the bank shall be required to pay out the money a second time.

■ The interest of the plaintiff, J. S. Streetman, administrator, and of defendants Shadburn Banking Company and Mrs. Davis, each related to the $1200 deposited by the deceased Streetman in the Shadburn Bank. The right to the $1200 was the common nexus connecting all of the parties. When Streetman sued the bank, Mrs. Davis was in possession of the money. For its protection it was essential for the bank to bring Mrs. Davis into the case, or else await the result of the Streetman suit, and in the event of losing that suit then to bring another independent suit against Mrs. Davis, and incidentally to risk a delay that might interpose a bar to its suit. It had received the deposit and had paid it out. It was only concerned in not being compelled to pay the amount a second time. It was not interested in who, as between J. T.

Streetman, administrator, and Mrs. Davis, should finally recover. In this circumstance the bank was legally entitled to have Mrs. Davis made a party so that the interests of all parties might be equitably adjudicated. She was made a party over objection of Streetman. In so ruling the court did not err.

After the filing of Mrs. Davis's answer and the overruling of J. S. Streetman's demurrers and objections, which were directed not only to the proposal to make her a party but also to the subject-matter of her answer and cross-bill, he filed an amendment to his petition, in which he set out a new and independent claim against her, and at the conclusion of the trial he moved for the direction of a verdict against her, jointly with the bank, for the $1200 which he had originally sought to recover from the bank alone. Furthermore, he is now, as a party defendant in error in the main bill of exceptions, resisting the effort of the bank and Mrs. Davis to have that judgment vacated and a new trial granted. Clearly he is no longer in position to complain of the alleged errors set out in his exceptions pendente lite. *Booth* v. *Mohr*, 122 *Ga.* 333, 337 (50 S. E. 173); *Hughes* v. *Field*, 177 *Ga.* 128 (169 S. E. 344).

In part of her answer Mrs. Davis alleged that the bank held as trustee for her the sum of $1200 which had been deposited by G. W. Streetman, deceased. The evidence did not justify such a contention, but was sufficient for a jury to find, as elsewhere in her petition contended, that she and G. W. Streetman entered into a valid and enforceable contract, whereby, in consideration of her nursing, caring for and maintaining him and his invalid wife during their respective lifetimes, she would be compensated at his death by receiving such of his property as he owned and possessed at that time. It appears that Mrs. Davis regarded her title as vesting immediately upon the making of the contract, subject to a right reserved in him to use or consume such part of the property as he saw fit during his lifetime; but we hold that in law, if she establish the validity of her claim, she would be a creditor, entitled to receive from his estate all of his estate after the payment of preferred claims established by law. She is entitled to assert such a claim, notwithstanding her mistaken allegations as to the trust in her favor because of the deposit of the $1200 in the bank. No question of election of remedies is involved, there being no inconsistency. The Code of 1933, § 3-114, declares that "A plaintiff may pursue

any number of consistent concurrent remedies against different persons until he shall obtain a satisfaction from some of them," and in her answer and cross-petition there were no such inconsistencies as would bar her from the collection of her claim if established to the satisfaction of the jury. See *Equitable Life Assurance Society* v. *May*, 82 *Ga.* 646, 655 (9 S. E. 597); *Harber* v. *Harber*, 158 *Ga.* 274, 277 (123 S. E. 114). "There is no inconsistency between different legal remedial rights, all of which are based upon a claim of title to property in the plaintiff, or all of which are based upon the affirmance of title in the defendant." *Board of Education* v. *Day*, 128 *Ga.* 156, 164 (57 S. E. 359). The amount of her claim could not be determined until G. W. Streetman's death, which occurred in the early part of 1930, one month after the death of his wife, but at such time it became fixed and payable out of his assets, subject only to the preferred claims established by law. Such a contract as the evidence justifies a jury in finding in favor of Mrs. Davis in this case is enforceable, under *Powell* v. *Clements*, 172 *Ga.* 381 (157 S. E. 639), and *Harp* v. *McGehee*, 179 *Ga.* 836 (177 S. E. 244). Inasmuch as the administrator was suing Mrs. Davis for the amount that he claimed to be due by her as property of his intestate, she is entitled in equity in the same suit to set off the value of her claim, if its validity is established, without being obliged to submit to a judgment in favor of the administrator for the full amount of $1200, and then to subsequently assert her claim in another suit. It is true that she did not specifically plead a set-off, but in connection with her allegations of her claim she had a prayer for general equitable relief, and she is entitled to be allowed the overplus of the estate after the payment of preferred claims. As to the power of a court of equity to deal with a valid set-off against an administrator, see Code of 1933, § 20-1307; *Ray* v. *Dennis*, 5 *Ga.* 357; *Carter* v. *McMichael*, 20 *Ga.* 96; *Moody* v. *Ellerbie*, 36 *Ga.* 666; *Dorsey* v. *Simmons*, 49 *Ga.* 245; *Markham* v. *Angier*, 57 *Ga.* 43, 46; *Bass* v. *Gobert*, 113 *Ga.* 262 (38 S. E. 834). There was evidence of preferred claims, but the total amount was not found in the court below, and should be determined upon a trial of the case. Such total is the amount for which judgment should be rendered for the administrator in the event the preferred claims are legally established and Mrs. Davis also establishes her claim; and the amount that she is entitled to retain as her own property,

in such a case, is the difference between $1200 and the total of the preferred claims. The direction of a verdict against Mrs. Davis for the full amount of $1200 was therefore error. Estoppel, which was urged by the defendant in error, is not in the case, as Mrs. Davis has not taken any position which has been acted on by an adverse party to his injury. See *Harris* v. *Woodard*, 133 *Ga.* 104 (65 S. E. 250).

■ Special ground 1 of the motion for new trial complains of the admission in evidence, over proper objection, of a statement of J. S. Streetman that the deceased, G. W. Streetman, had told him that he was paying Mr. and Mrs. Davis $10 per month for board. This evidence was not a part of the res gestæ, and was irrelevant, and it should have been excluded.

Ground 2 complains of the admission of a letter dated December 16, 1929, from G. W. Streetman to J. S. Streetman, in which the writer expressed a wish to go to J. S. Streetman's house, stating in effect that he was having a hard time where he was. This letter did not throw any light on the existence or non-existence of the agreement Mrs. Davis alleged had been made with G. W. Streetman. At most it merely expressed dissatisfaction with the circumstances attending the writer, and had no materiality to the issue.

Ground 3 complains of the admission in evidence of the application of W. O. Davis to be appointed administrator, the intervention of Mrs. W. O. Davis asking that she be appointed, the verdict on appeal in the superior court, and the decree appointing J. S. Streetman administrator. The court did not err in admitting these documents. They were an important part of the history of the case, and without them that history would have been incomplete. Further, the original petition alleged that J. S. Streetman was the duly qualified administrator, and neither the answer of the bank nor that of Mrs. Davis admitted that to be true. Therefore the plaintiff was put on proof of that item. Still further, the plaintiff was entitled to the benefit of any statements made by Mrs. Davis in her intervention throwing light on her own construction of the agreement alleged to have been made by her with G. W. Streetman.

Ground 4 complains of the directed verdict dealt with hereinabove.

The plea to the jurisdiction which was filed by J. S. Streetman to Mrs. Davis's cross-action appears never to have been ruled on

by the trial court; and indeed it was not necessary for it to be ruled on, in view of the circumstances which developed in the case.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*

ATKINSON and BELL, JJ., concur specially.